# NASH *v.* RAWLETT.

---

EVIDENCE; EJECTMENT; TRESPASSERS; EVIDENCE; POSSESSORY TITLE; MAR-
SHAL'S DEED.

1. A plaintiff in an action of ejectment against a trespasser may intro-
   duce in evidence quitclaim deeds to himself from the heirs of one who
   claimed a possessory right to the land, and from their grantee.

2. A paper executed by one, claiming to own a square of land, authorizing
   his lessee to move the latter's house to a specified one of the lots
   of the square, is not admissible in evidence in ejectment, for the pur-
   pose of defeating the right of possession to an adjoining lot in the
   square, of one who claimed under the lessor, relying upon the lessee's
   possession, where the lessee placed the house, partially at least, on the
   adjoining lot, with the knowledge and consent of the lessor, who
   collected the rent for the square, giving therefor receipts reciting
   that the rent was for the occupation of the same. (Citing *Rawlett
   v. Nash*, 38 App. D. C. 598.)

3. An official permit to fence a lot, and an official survey thereof, are
   inadmissible in evidence to aid the defendant in an action in eject-
   ment instituted to recover possession of the lot, since neither can
   confer a right of possession or license a trespass.

4. A marshal's deed of land sold under execution against a third person
   is not admissible in evidence for the purpose of defeating the posses-
   sory title of a plaintiff in ejectment, where it is not shown that the
   execution defendant had any title or interest in the land.

5. A person in peaceable possession of land, either in person or by tenant,
   is presumed to be lawfully in possession, and will be permitted to
   recover possession from a mere trespasser without further proof of

D. C.]                       Statement of the Case.

title, in comformity to the policy of protecting the public peace
against violence and disorder. (Citing *Bradshaw* v. *Ashley*, 14 App.
D. C. 485, affirmed in 180 U. S. 59, 45 L. ed. 423, 21 Sup. Ct. Rep.
297, and *Chesapeake Beach R. Co.* v. *Washington, P. & C. R. Co.*
23 App. D. C. 587.)

6. A person who, originally a trespasser, obtains possession from a lessee
whose lessor has a possessory title cannot defeat such title by ac-
quiring the rights of a stranger who has no connection with the
title.   (Citing *Rowlett* v. *Nash, supra.*)

7. A lessor's claim in ejectment of possessory title by virtue of his tenant's
occupancy extends to only so much as was actually in the tenant's
possession.

8. A trespasser's purchase of a house from the owner, who is lessee of
the lot upon which it stands, with knowledge that the lessor claims
a possessory title to the land, and for the purpose of procuring the
surrender of the tenant's possession, does not effect the lessor's title.

9. A person claiming a possessory interest in a lot, partly by virtue of
his own asserted possession and partly through another's surrender
of so much as was in his possession as lessee from one who claimed a
prior possessory title, is entitled, as against a successor to the lessor's
title, to that portion, and only that portion, whose possession was not
obtained by him from the lessee.

No. 2596.   Submitted January 7, 1914.   Decided February 2, 1914.

HEARING on an appeal by the defendant from a judgment of
the Supreme Court of the District of Columbia, on verdict, in
an action of ejectment.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment in an action of eject-
ment, begun by Mary S. Rawlett against Franklin P. Nash,
appellant, to recover the possession of lot 5 in square 611, city
of Washington.

A former trial resulted in a judgment for defendant, which
was reversed. *Rowlett* v. *Nash,* 38 App. D. C. 598.

Plaintiff offered evidence tending to show that in March,
1903, one John F. Shea, claiming lots 4 and 5 in the square
611, gave permission to Peter Young and his wife to move a

house belonging to them to lots 4 and 5, and leased the occupation of the ground to them for $2 per month. That during the same year defendant demanded payment of rent, which was refused. He then built a fence entirely around lot 5. Shea, having been informed of this by Young, cut the fence down. Defendant entered a second time and commenced to build. Shea knocked the building down. A third time defendant came and erected a fence and house. Shea knocked down part of the house, and cut down the fence, and the Youngs burned part of it as firewood. After the death of Shea, defendant came and began filling the front of the lot next to the river, and thereby threw the water back on Young's premises. He then commenced to build on the lot. He paid the Youngs $60 for their house, who gave him possession. He then tore down the house. Receipts of Shea to Young for the monthly rent recited that it was for the occupation of square 611. Plaintiff offered in evidence a tax deed, which was excluded. Shea died intestate in December, 1906, leaving two brothers, who were his heirs at law. A quitclaim deed executed by said heirs dated March 21, 1910, and recorded March 25, 1910, to Galen E. Green, conveying lot 5 in square 611, was read by plaintiff, and a deed from Green to her dated March 25, 1910, and recorded the same day. Defendant objected to these deeds and excepted to the ruling admitting them; no ground of objection stated.

It was admitted that defendant was in possession at the time the action was begun.

Mildred Young testified that the tide did not come all over the lot, but it was marshy all about. That she walked through the marsh to the public pump for water. There was no house on the front of the square; witness had a chicken house; her house fronted on Second street, and the chicken house was back. She had a wood pile sometimes at the back of her house. She used both lots in square 611.

Defendant offered evidence tending to show a judgment recovered by the Christian Heurick Brewing Company against one William Mayse on May 28, 1894, executions therefor from that time to August 27, 1902, levy and sale by the marshal of

lot 5 in square 611, and deed by the marshal to defendant October 7, 1902. No evidence was offered to show any interest whatever of said Mayse in the premises conveyed, and upon objection of plaintiff the deed was excluded, with exception by defendant. Defendant next offered a paper signed by Shea March 4, 1903, granting Peter Young permission to move a house to lot 4 in square 511. This was excluded on objection by plaintiff, and defendant again excepted.

Defendant offered evidence tending to show that he had lot 5 surveyed in 1905, and erected a fence across the front, sides, and back to a short distance from the house of Young. There was nothing on the lot but the Young house, which was partly on lot 4 and partly on lot 5. Lot 5 was low ground sloping to a swamp; tide came up to the lot.

Inclosed with his fence all of the lot except the rear and about 22 feet across the back and 2 or 3 feet south of Young's house; continuous fence from one side to the other. He offered a permit from the District of Columbia to erect the fence. This was excluded and exception noted. He also offered a paper showing a survey of lot 5 by the district surveyor made April 13, 1905, which was also excluded with exception noted. Peter Young had an inferior house of one story on the lot 5; his chicken coop and privy were on lot 4. Most of his fence was torn down; it was rebuilt and stayed until witness took part of it down and put up a building on V street, front covering about half of the lot. Depredations were committed on the house which was building; the weather boarding was knocked off in March, 1906, for about 5 or 6 feet, and it remained in that condition about two years, when witness finished it and put the tenants in possession, and the Youngs sold their house to him. At that time his fence inclosed all of the lot except the Young house, leaving the corner, about 22 by 34 feet uninclosed. He offered a plat showing the lines of his fence and house, which was excluded. That he measured his building and the lot; the lot is 114 feet deep; the tool house 20 feet by 10 feet. Young made no use of lot 5 by fence or for a garden. Young went by the rear way in coming to and going from his house.

Cross-examined, he said the Youngs did not tell him that Shea
owned the property. Did not know that Shea claimed it. Shea
offered to buy defendant's claim; lawyers tried to adjust their
differences. Suspected Shea of tearing down his fence. After
he heard of Shea's death, he went there again. Other evidence
tended to show that the lot was marshy and Young made no
use of it except that part occupied by his house.

Defendant then read the depositions of Peter Young, taken
by plaintiff *de bene esse.* Witness became acquainted with Shea
when he leased the lot from him. Shea kept the paper. Moved
the house and put it on Shea's ground. Shea twice knocked
down a house erected by defendant. Paid Shea $2 per month
and produced the receipts before referred to. After Shea's death
defendant gave witness notice to move. He was filling the lot,
dropping the water back on witness's house, and witness sold
the house to defendant for $60 and gave him possession. This
was after Shea's death. Shea told witness to put his house on
either one of the lots.

At the request of plaintiff the court instructed the jury to
the effect that if the lot was in the possession of Shea by a
tenant, and defendant knew that Shea claimed the title, and
that the purchase of the tenant's house was really for the pur-
pose of procuring a surrender of the possession, then, plaintiff,
holding Shea's interest, would be entitled to recover. This was
excepted to. At request of defendant the court instructed the
jury that the plaintiff has no right to any part of the premises
except such part, if any, as the defendant obtained possession
of through Shea's tenant. · Also that if they find from the evi-
dence that at the time defendant purchased of the tenant he
was already in possession of the larger part of the lot, and did ·
not obtain the same from the tenant, their verdict should be for
the defendant. The court refused the special instructions
prayed by defendant, to which exceptions were taken: (1) That
if the authority to Young was to move his house to lot 4 in
square 611, the purpose of both parties being to occupy lot 4,
then the fact that the said house was placed partly on lot 5
did not make Young a tenant of Shea of lot 5, and did not

constitute a holding of the same or any part thereof by Shea;
(2) in determining whether defendant had or had not posses-
sion of the larger part of said premises prior to the purchase
of Young, the jury are instructed that if defendant had inclosed
such larger part and erected a building thereon, and had by
means of said improvements excluded said Young from said
larger part, they should find, as to said larger part, that defend-
ant did not receive possession from said Young.

The charge was to the effect that neither party had proved
title to the lot, and the question between them was one of pos-
session as distinct from title. That if Young as tenant of Shea,
was in possession of, and making use of all of lot 5, that pos-
session could not be defeated by defendant by purchase of the
tenant; and if defendant paid the tenant in order to induce
him to deliver possession of the small part of the lot, and de-
fendant acquired and held possession of the greater part of the
same independently of Young, and, in fact only purchased the
possession of the small part occupied by Young's house, then
plaintiff would only be entitled to a verdict for the smaller
part. No exception was taken to the charge. The jury returned
a verdict for the plaintiff, and judgment followed.


*Mr. A. A. Birney* and *Mr. Irving Williamson* for the appel-
lant.


*Mr. John Ridout* for the appellee.


Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

The court did not err in permitting the plaintiff to produce
in evidence the quitclaim deeds from Shea's heirs at law to
Green, and from Green to her. They did not vest a title in
the plaintiff to the lot, and so the court charged the jury; but
they passed to her whatever possessory right Shea may have
had as against a real trespasser. *Chesapeake Beach R. Co.* v.

*Washington, P. & C. R. Co.* 199 U. S. 247, 249, 252, 50 L. ed.
175, 177, 178, 26 Sup. Ct. Rep. 25.

2. There was no error committed in excluding the paper
authorizing Young to move the house to lot 4 in square 611.
He actually moved it on to lot 5, with the knowledge and
acquiescence of Shea, who leased him square 611 and collected
rent therefor as shown in his written receipts. *Rowlett* v. *Nash,*
38 App. D. C. 598, 605.

3. There was no error in excluding the official "permit" to
defendant to erect a fence on lot 5, or the survey made by the
district surveyor. Permits for the erection of structures on a
lot in the city are required by the building regulations in the
public interest. Neither they, nor a survey made at anyone's
request, can confer a right of possession or license a trespass.

4. The judgment against Mayse, execution and sale there-
under, and the marshal's deed conveying the interest of Mayse
to defendant, were rightly excluded. No attempt was made to
show that Mayse had title to, or any interest whatever in, the
lot in controversy. If Shea had been in peaceable possession
of the lot, in person or by tenant, the presumption of law is
that his possession was lawful, and he was entitled to recover
possession from a mere trespasser without further proof of title.
The rule is founded in the policy of protecting the public peace
against violence and disorder. *Bradshaw* v. *Ashley,* 14 App.
D. C. 485, 504; s. c. 180 U. S. 59, 45 L. ed. 423, 21 Sup. Ct.
Rep. 297; *Chesapeake Beach R. Co.* v. *Washington, P. & C.
R. Co.* 23 App. D. C. 587, 595; s. c. 199 U. S. 247, 50 L. ed.
175, 26 Sup. Ct. Rep. 25. If such a deed were admissible, "a
party might wrongfully intrude and enter upon the possession
of another, as a pure intruder, and yet make a claim of title
under a deed which manifestly conveyed none, and which the
party could not in good faith have supposed conveyed title, and
then call upon plaintiff for full proof of title in fee. Such
entry could not be excused by any subterfuge of that kind."
*Bradshaw* v. *Ashley,* 180 U. S. 59, 65, 45 L. ed. 423, 430, 21
Sup. Ct. Rep. 297. Clearly as to the part of the lot actually
occupied by the tenant's house, possession of which was acquired

by surrender of the tenant, the possessory title of Shea and his successors could not be defeated by a title acquired from one who had no connection with the title. *Rowlett* v. *Nash*, 38 App. D. C. 598, 605. If, on the other hand, the tenant was not in possession of the remainder of the lot, defendant's possession was not acquired by trespass, as charged by the court, and he was entitled to a verdict for that part of the lot, because plaintiff had not proved title. The excluded deed added nothing to that right.

5. The instruction given on behalf of plaintiff was in accord with the opinion of the court on the former appeal and the principles hereinbefore declared. The special instructions given on behalf of the defendant clearly stated the right of the defendant to recover possession of such part of the premises as he may not have acquired from the tenant, Young. The first refused instruction is disposed of by what has been said in discussing the rejection of the permit to Young to remove the house. The second refused instruction was embodied in the charge, which left it to the determination of the jury whether the tenant, Young, was in actual possession and making use of the whole of lot 5 at the time of the entry by defendant.

We perceive no error in the trial, and the judgment is affirmed, with costs.                              *Affirmed.*